UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KEITH AARON MCKAY )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MISSOURI DEPARTMENT OF )<br>SOCIAL SERVICES, et al., )<br>)<br>Defendants. | Case No. 4:23-cv-00495-SRC |

**<u>Memorandum and Order</u>**

Plaintiff Keith Aaron McKay sues the Missouri Department of Social Services and the Missouri Family Support Division to recover for alleged harm he suffered in connection with his obligation to pay child support. McKay alleges that Defendants violated his constitutional rights and injured him in several ways, including by fraud, peonage, involuntary servitude, forced labor, and extortion. Defendants move to dismiss for lack of subject-matter jurisdiction. Because neither Congress nor Missouri has abrogated the agencies' Eleventh-Amendment immunity, the Court lacks subject-matter jurisdiction. The Court grants Defendants' motion and dismisses the case without prejudice.

**I.      Background**

McKay alleges that on June 20, 2016, the Missouri Department of Social Services and Missouri Family Support Division "began unjustly, fraudulently, and unlawfully employing tort and enforcing deceptive practices" towards him. Doc. 1 at p. 7. In August of 2016, the Circuit Court of St. Louis County, Missouri ordered McKay to pay $200 in child support monthly to Karolyn Lashay Harrison. Doc. 1-3 at p. 7. Apparently, McKay did not discover this "fraud and injury" until "circa 2022 A.D." *Id*. at p. 7.

On April 19, 2023, McKay filed a *pro se* complaint, seeking $15 million in damages. Doc. 1 at p. 4. Defendants move to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction. Doc. 8. McKay filed no response to the motion, but instead moved to "strike" Defendants' motion. Doc. 11. McKay has also filed a Motion for Summary Judgment, Doc. 14, a "Motion to Compel Defendants to Cease and Desist," Doc. 24, and a Motion for Judgment on the Pleadings, Doc. 30.

## II.    Standards

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may move to dismiss a claim for lack of subject-matter jurisdiction. A Rule 12(b)(1) motion allows the court to address the threshold question of jurisdiction, as "judicial economy demands that the issue be decided at the outset rather than deferring it until trial." *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990). To survive a 12(b)(1) motion to dismiss, the party asserting jurisdiction bears the burden of establishing that subject-matter jurisdiction exists. *V S Ltd. P'ship v. Dep't of Hous. & Urb. Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000) (citing *Nucor Corp. v. Neb. Pub. Power Dist.*, 891 F.2d 1343, 1346 (8th Cir. 1989)). To do so, the plaintiff must plausibly allege that the court has subject-matter jurisdiction. *See Brownback v. King*, 141 S. Ct. 740, 749 (2021) (citing *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014)).

"In deciding a motion under Rule 12(b)(1), the district court must distinguish between a facial attack—where it looks only to the face of the pleadings—and a factual attack—where it may consider matters outside the pleadings." *Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018) (citing *Osborn v. United States,* 918 F.2d 724, 729 n.6 (8th Cir. 1990)). "In a facial attack, 'the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6).'"

*Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (quoting *Osborn*, 918 F.2d at 729 n.6). "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Id.* (quoting *Osborn*, 918 F.2d at 729 n.6). Because the jurisdictional issue here is not "'bound up' with the merits of the case," the Court construes the Defendants' motion to dismiss as a facial attack. *Croyle*, 908 F.3d at 380 (quoting *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018)). The Court must accept as true all of the factual allegations in the complaint, but it need not accept legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Carlsen*, 833 F.3d at 908 (quoting *Trooien v. Mansour*, 608 F.3d 1020, 1026 (8th Cir. 2010)).

The Court liberally construes complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Liberal construction" means that "if the essence of an allegation is discernible," the Court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). That said, even *pro se* complaints must allege facts that, if true, state a claim for relief. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980) (first citing *Nickens v. White*, 536 F.2d 802, 803 (8th Cir. 1976); and then citing *Ellingburg v. King*, 490 F.2d 1270 (8th Cir. 1974)). Federal courts need not assume non-alleged facts, *see Stone*, 364 F.3d at 914–15, nor must they interpret procedural rules to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

**III.   Discussion**

McKay seeks to sue state agencies, so the Court must address the "jurisdictional threshold matter" of whether the Eleventh Amendment bars McKay's suit in federal court. *See*

3

*Harmon Indus., Inc. v. Browner*, 191 F.3d 894, 903 (8th Cir. 1999) (citing *Dewitt Bank & Trust Co. v. United States,* 878 F.2d 246 (8th Cir. 1989)).  McKay filed his case in federal court, seeking monetary damages from Defendants.  *See* Doc. 1.  Defendants argue that—because of their status as "arms" of the State of Missouri—the Eleventh Amendment provides them with immunity.  *See* Doc. 9 at pp. 8–11; *see* U.S. Const. amend. XI.  McKay insists in his "Motion to Strike" that this Court has jurisdiction because Defendants have waived their immunity to suit by statute.  Doc. 11 at p. 1.  The Court agrees with Defendants.  Because McKay has not overcome Defendants' sovereign-immunity defense, the Court lacks subject-matter jurisdiction, and he cannot sue them in federal court, whether under § 1983, on common-law theories of liability, or otherwise.  *See Harmon Indus.*, 191 F.3d at 903 (citing *Dewitt*, 878 F.2d);  Doc. 1 at pp. 7–14.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984) (emphasis in original).  The Supreme Court has ruled that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Emps. of Dep't of Pub. Health & Welfare, Mo. v. Dep't of Pub. Health & Welfare*, *Mo.*, 411 U.S. 279, 280 (1973) (collecting cases); *see also Williams v. Missouri*, 973 F.2d 599, 600 (8th Cir. 1992) ("The Eleventh Amendment bars suits against a State by citizens of that same State in federal court." (citing *Papasan v. Allain*, 478 U.S. 265, 276 (1986))).  This immunity extends to state agencies that are considered arms of the state. *Tex. Cmty. Bank, N.A. v. State of Mo. Dep't of Soc. Servs*., 232 F.3d 942, 943 (8th Cir. 2000).  Indeed,

4

the Eighth Circuit has recognized that the Missouri Department of Social Services is one such agency. *See id.* (The Missouri Department of Social Services, as an agency of the State of Missouri, "may assert the Eleventh Amendment immunity of the State." (citing *Edelman v. Jordan,* 415 U.S. 651 (1974))).

It should come as no surprise, then, that when a state, or one of its agencies, is sued in federal court, "it must be dismissed from litigation upon its assertion of Eleventh Amendment immunity unless one of two well-established exceptions exists": (1) the abrogation of immunity by Congress in clear and unmistakable language or (2) the state's waiver of immunity and consent to suit in federal court. *Barnes v. Missouri*, 960 F.2d 63, 64 (8th Cir. 1992) (first citing *Kroll v. Bd. of Trs. of Univ. of Ill.*, 934 F.2d 904, 907 (7th Cir. 1991); and then citing *Welch v. Tex. Dep't of Hwys. & Public Transp.,* 483 U.S. 468, 472–74 (1987)). Neither exception presents itself here.

First, Congress has not abrogated Missouri's Eleventh-Amendment immunity here, either through § 1983 or through some other statute. As an initial matter, the Court notes that § 1983 does not apply here, because § 1983 only applies to "person[s]." *See* 42 U.S.C. § 1983 ("Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." (emphasis added)). And state agencies—like Defendants—do not qualify as "person[s]" under the statute. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65–66 (1989).

But even if § 1983 applied here, "Congress did not abrogate the states' Eleventh Amendment immunity by enacting 42 U.S.C. § 1983." *Williams*, 973 F.2d at 600 (citing *Barnes*,

960 F.2d at 65). Although § 1983 "provides a federal forum to remedy many deprivations of civil liberties, . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will*, 491 U.S. at 66. The Supreme Court made this clear when it stated that "§ 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States . . . ." *Quern v. Jordan*, 440 U.S. 332, 345 (1979). "[N]or does [§ 1983] have a history which focuses directly on the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States." *Id*. Thus, Congress did not abrogate the Defendants' Eleventh-Amendment immunity to grant this Court jurisdiction over McKay's § 1983 suit. The parties have not cited, nor has the Court found, any other statute by which Congress has abrogated Eleventh-Amendment immunity for the claims that McKay seeks to bring here.

As to the second exception, Missouri has not consented to suit in federal court by waiving its immunity. No statute waives Eleventh-Amendment immunity with respect to the Department of Social Services. And although Mo. Rev. Stat. § 454.400.2(1) states that the Family Support Division "ha[s] the power . . . to sue and be sued," that clause does not amount to a waiver of Eleventh-Amendment immunity.

"The test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985). "Although a State's general waiver of sovereign immunity may subject it to suit in state court, it is not enough to waive the immunity guaranteed by the Eleventh Amendment." *Id.* (citing *Fla. Dep't of Health v. Fla. Nursing Home Ass'n,* 450 U.S. 147, 150 (1981) (per curiam)). "Thus, in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in *federal court.*" *Id.*

6

(emphasis in original) (first citing *Smith v. Reeves*, 178 U.S. 436, 441 (1900); and then citing *Great Northern Life Ins. Co. v. Read*, 322 U.S. 47, 54 (1944)).  Indeed, a State waives its immunity "only where stated 'by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.'"  *Id.* at 239–40 (quoting *Edelman*, 415 U.S. at 673).

Here, § 454.400.2(1) lacks the sort of "express language" and "overwhelming implication from the text" that would allow the Court to conclude that Missouri intended to waive its Eleventh-Amendment immunity with respect to the Family Support Division.  *Id.*  Straightforward application of Supreme Court precedent demands this conclusion.  In *Florida Department of Health and Rehabilitative Services v. Florida Nursing Home Association*, the Supreme Court held that statutory language materially identical to that at issue here—specifically, that a Florida agency has the capacity "to sue and be sued"—did "not constitute a waiver by the state of its constitutional immunity under the Eleventh Amendment from suit in federal court."  450 U.S. at 149–50 (first quoting *Fla. Nursing Home Ass'n v. Page*, 616 F.2d 1355 (5th Cir. 1980); and then citing *Smith*, 178 U.S. at 441).  Missouri, then, has not waived its Eleventh-Amendment immunity with respect to either the Department of Social Services or the Family Support Division.

Because neither exception to Eleventh-Amendment immunity presents itself here, the Eleventh Amendment applies in full force—barring McKay's suit against the Defendants in federal court.  Accordingly, the Court lacks subject-matter jurisdiction over this case and dismisses it without prejudice.

**IV.     Conclusion**

Construing the allegations in the light most favorable to McKay, the Court lacks subject-matter jurisdiction over this case, grants Defendants' motion to dismiss, Doc. 8, and dismisses this case without prejudice.  The Court further denies as moot McKay's Motion to Strike, Doc. 11; McKay's Motion for Summary Judgment, Doc. 14; McKay's Motion to Compel, Doc. 24; and McKay's Motion for Judgment on the Pleadings, Doc. 30.  A separate Order of Dismissal accompanies this Memorandum and Order.

So Ordered this 28th day of July 2023.

_SLR. CR_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE